MICHAEL M. EDWARDS
Nevada Bar No. 006281
SHERI M. SCHWARTZ
Nevada Bar No. 008657

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
400 South Fourth Street, Suite 500
Las Vegas, Nevada 89101
(702) 893-3383
FAX: (702) 893-3789

Attorneys for Defendants
BMW OF NORTH AMERICA, LLC;
BMW FINANCIAL SERVICES NA, LLC; and
JRJ INVESTMENTS, INC. dba DESERT BMW of HENDERSON

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER TROUT,<br><br>    Plaintiff,<br><br>  v.<br><br>BMW OF NORTH AMERICA, a corporation or business entity; BMW FINANCIAL SERVICES, a corporation or business entity; DESERT BMW of HENDERSON, a Nevada corporation, and DOES I through 10, inclusive,<br><br>    Defendants. | CASE NO. 2:04-CV-1466-BES(LRL)<br><br>**DEFENDANTS BMW OF NORTH AMERICA, LLC, BMW FINANCIAL SERVICES, AND DESERT BMW OF HENDERSON'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |

Defendants BMW of NORTH AMERICA, LLC ("BMW NA") BMW FINANCIAL SERVICES ("BMW FINANCIAL"), and DESERT BMW of HENDERSON ("DESERT BMW"), by and through its counsel, Michael M. Edwards and Sheri M. Schwartz of Lewis Brisbois Bisgaard & Smith LLP, hereby move for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56, or in the alternative, partial summary judgment.

The Motion is based upon Plaintiff's inability to establish Counts 3, 11, 12, 13, 14, 15, 16, 17, 18 and 19 as a matter of law. This Motion is made and based upon the pleadings and papers on file herein, the Memorandum of Points and Authorities submitted herewith, the Declaration of

4830-5104-7169.1

Sheri Schwartz and exhibits thereto and any oral argument that the Court may entertain on the hearing of this matter.

Dated this 23 day of June, 2006.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
MICHAEL M. EDWARDS, Nevada Bar No. 006281
SHERI M. SCHWARTZ, Nevada Bar No. 008657
400 S. Fourth St., Suite 500
Las Vegas, Nevada 89101
Attorneys for Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Christopher Trout has alleged nineteen counts against BMW NA, BMW FINANCIAL and DESERT BMW all arising from his lease of a BMW M3 in March of 2003. The claims include violation of the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq, and the Magnuson-Moss Act, 15 U.S.C. 2301 et. seq.. Through this Motion, Defendants seek summary judgment on Counts 3, 11, 12, 13, 14, 15, 16, 17, 18 and 19, as Plaintiff can prove no set of facts that would entitle him to prevail on these counts.

### II. STATEMENT OF FACTS

1. On March 27, 2003, Trout leased a 2003 BMW M3 from DESERT BMW. (Complaint, par. 20).

2. Mr. Trout agreed to the lease conditions, which required him to make monthly payments in the amount of $949.97. The lease was between Trout and BMW FINANCIAL. (Complaint, pars. 21-22).

3. On December 4, 2003, Mr. Trout had a tire blow-out in the M3. He sought to have the car towed on a flatbed truck. The M3 did not have a proper tow hook eye, so Plaintiff borrowed one from DESERT BMW. During the process of pulling the M3 onto the flatbed, the tow hook eye broke loose from the M3 anad the M3 fell to the ground. The M3 was then towed by a regular tow truck to Desert BMW-Las Vegas.

5. The vehicle was taken to DESERT BMW-Las Vegas, where it remained, according to Plaintiff, for over 30 days. (Complaint, par. 49).

6. At the request of Mr. Trout, BMW NA offered to buy-back the vehicle, which entailed reimbursing Mr. Trout for the down payment, the payments made on the vehicle, and paying $2,000 in attorneys' fees. (Letters from BMW to Plaintiff, attached to Declaration of Sheri Schwartz as Exhibit A).

7. Plaintiff claims that he learned on February 24, 2004 that BMW FINANCIAL had reported at least one derogatory remark to credit reporting agencies based on his delinquent payments, and thereafter refused BMW NA's offer to buy back the vehicle. (Complaint, par. 182). Mr. Trout also refused to make further monthly lease payments.

8. Mr. Trout alleges that because of the derogatory credit mark, he was unable to get a more favorable rate on a home he was purchasing at the time. (Complaint, par. 183).

### III.   ARGUMENT

#### A.   STANDARD FOR SUMMARY JUDGMENT.

Pursuant to Rule 56 of the FRCP, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Once the moving party has met that burden, the party opposing the motion "must set forth specific facts demonstrating that there is a genuine issue for trial." FRCP 56(e); see also, Summers v. A. Teichert & Son, 127 F.3d 1150, 1152 (9th Cir. 1997).

The moving party has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point to the absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also, Stutz Motor Car of America, Inc. v. Reebok Int'l, Ltd., 909 F. Supp. 1353, 1358 (C.D. Cal. 1995) ("summary judgment must be entered against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish an element essential to that party's case, and which that party would bear the burden of proof at

trial")(emphasis added). In this case, Plaintiff can prove no set of facts to establish that Defendants have acted in violation of the named federal, state, or common laws. Accordingly, the Court should grant Defendant's motion for summary judgment or in the alternative, partial summary judgment.

### B. PLAINTIFF CANNOT MAINTAIN COUNTS 11 AND 16 FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (FCRA).

1. <u>Because there is no private right of action under 15 U.S.C. 1681s-2(a) for failure to provide accurate information, Count 11 of the Complaint fails as a matter of law.</u>

Under the FCRA, furnishers of information to consumer reporting agencies have two duties: 1) the duty to provide accurate information (15 U.S.C. 1681s-2(a)), and 2) the duty to investigate the accuracy of reported information upon receiving notice of a dispute (15 U.S.C. s-2(b)). The first duty is enforced exclusively by state and federal officials. 15 U.S.C. 1681s-2(d). There is no private right of action against a furnisher of credit for failing to provide accurate information. <u>Nelson v. Chase Manhattan Mortgage Corp.</u>, 282 F.3d 1057, 1060 (9th Cir. 2002).

Count 11 of Plaintiff's Complaint alleges that BMW Financial negligently caused, directed or otherwise instructed national credit agencies to report false and damaging information regarding his credit history, which caused him to incur higher interest rates on the refinance of his home. However, under 15 U.S.C. 1681s-2(d) and <u>Nelson</u>, Plaintiff has no private right of action under the FCRA. As a result, all Defendants (including BMW Financial) are entitled to summary judgment as to Count 11.

2. <u>Because Trout did not report the negative mark to a credit bureau, Count 16 of the Complaint fails as a matter of law.</u>

If a credit reporting agency notifies a furnisher of credit regarding a consumer dispute, the furnisher of information must adequately investigate and correct any inaccuracy, and a consumer may have a private right of action for failure to do so. <u>Cisneros v. Trans Union, LLC</u>, 293 F.Supp.2d 1167, 1174 (D. HI 2003). However, the furnisher's duty to act and the consumer's right to sue arise only if and when the disputatious consumer notifies the credit reporting agency of the dispute, who then notifies the furnisher. <u>Roybal v. Equifax</u>, 405 F. Supp. 2d 1177, 1179-1180 (E.D. Cal. 2005). A consumer's unilateral act in "contacting the furnisher of credit directly does

4830-5104-7169.1
Page 4 of 15

not actuate the furnisher's obligation to investigate nor does it give rise to a private right of action." Id. at 1180.

To maintain a FRCA claim under 15 U.S.C. 1681s-2(b), a plaintiff must demonstrate that he contacted a credit reporting agency to dispute a credit mark, the credit reporting agency determined the consumer's dispute was viable, and the credit reporting agency contacted the furnisher of credit to investigate. Roybal v. Equifax, 405 F. Supp. 2d 1177, 1180 (E.D. Cal. 2005). In Roybal, the plaintiff failed to allege that he contacted the credit reporting agency who in turn contacted the furnisher of credit, so his claim was dismissed. Id. In Davis v Maryland Bank, N.A., the court took the same action since the plaintiff could not demonstrate he notified a credit reporting agency who in turn notified the furnisher of credit. No. 00-04191, 2002 U.S. Dist. LEXIS 26468 at *53 (N.D. Cal. 2002). In Davis, the plaintiff produced two letters to demonstrate that he had notified a credit reporting agency of his dispute, but could not demonstrate that the credit reporting agency ever contacted the furnisher of credit. Id. at *54. The court refused to presume, based solely on the plaintiff's unsupported statement, that the credit reporting agency must have notified the furnisher of credit. Id.

Here, Plaintiff Trout cannot prove any set of facts that would allow him to maintain Count 16 against Defendants for alleged violations of the FCRA. As an initial matter, neither BMW NA nor DESERT BMW are "furnishers of information" to consumer reporting agencies for the purposes of this case, despite being named as defendants in all Counts of the Complaint.

Plaintiff alleges in Count 16 that Defendants (meaning BMW FINANCIAL) have failed to correct, remove, or otherwise remedy the derogatory marks placed on his credit report, in violation of the FCRA. Compl. ¶¶ 186, 219. However, Plaintiff has not offered any set of facts to demonstrate that Defendants received notice from a credit reporting agency as required to invoke any remedies under 15 U.S.C. 1681s-2(b). Plaintiff has merely alleged that he has provided oral and written demands to Defendants to remedy the allegedly derogatory remarks. Compl. ¶ 184. This alone, according to Roybal and Davis, is not enough. Plaintiff has not produced any documents indicating that he notified the credit reporting agencies of a dispute, or that the credit reporting agencies notified Defendants, particularly BMW FINANCIAL.

Because Plaintiff has not and cannot prove any set of facts in support of his FCRA claims, his claims must fail against all Defendants. Since there is no genuine issue of material fact, Defendants are entitled to judgment as a matter of law and their motion for summary judgment on Counts 11 and 16 should be granted.

### C. PLAINTIFF'S STATE LAW CLAIMS RELATING TO THE CREDIT ISSUES ARE PREEMPTED BY THE FCRA AND THEREFORE MUST FAIL AS A MATTER OF LAW.

The FCRA includes both general and specific preemption clauses that preclude various state claims against furnishers of credit information. 15 U.S.C. 1681h(e); 1681t(b)(1)(F). The majority of courts have determined that both common law and state statutory claims are barred under the provisions. See Davis v Maryland Bank, N.A., No. 00-04191, 2002 U.S. Dist. LEXIS 26468 at *39 (N.D. Cal. 2002). The Ninth Circuit has not yet determined the scope of the preemption clauses or which clause to apply in particular cases, but district courts within the circuit have applied both clauses to bar defamation claims against furnishers of credit. See Cope v. MBNA America Bank, N.A., 2006 U.S. Dist. LEXIS 10937 (D. Or. 2006); Roybal v. Equifax, 405 F. Supp. 2d 1177 (E.D. Cal. 2005); Cisneros v. Trans Union, LLC, 293 F.Supp.2d 1167 (D. Hi. 2003); Davis v Maryland Bank, N.A., No. 00-04191, 2002 U.S. Dist. LEXIS 26468 (N.D. Cal. 2002).

The general preemption clause provides that "no requirement or prohibition may be imposed under the laws of any state with respect to any subject matter regulated under section 1681s-2 of this title," that is, the regulations relating to furnishers of credit. 15 U.S.C. 1681t(b)(1)(F). This prohibition reflects the legislature's intent to ensure that credit information would be disclosed in a uniform fashion. Davis v Maryland Bank, N.A., No. 00-04191, 2002 U.S. Dist. LEXIS 26468 at *41 (N.D. Cal. 2002). Indeed, allowing state and common law tort claims related to FCRA claims to proceed "would undermine Congress' intention to create a uniform system of protection for consumers." Id.

Most courts apply the plain meaning of this general preemption clause to bar defamation claims against furnishers of credit for allegedly providing inaccurate credit information or failing to investigate credit disputes. See Cope v. MBNA America Bank, N.A., 2006 U.S. Dist. LEXIS

4830-5104-7169.1                    Page 6 of 15

10937 (D. Or. 2006); Roybal v. Equifax, 405 F. Supp. 2d 1177 (E.D. Cal. 2005); Davis v Maryland Bank, N.A., No. 00-04191, 2002 U.S. Dist. LEXIS 26468 (N.D. Cal. 2002). If a defamation claim is based solely on injury allegedly resulting from erroneous reporting, the claim is absolutely barred since those claims in general are only enforceable by government officials. Roybal v. Equifax, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005). Where a defamation claim is based on failure to investigate complaints of erroneous reporting, the claim is also barred. Davis v Maryland Bank, N.A., No. 00-04191, 2002 U.S. Dist. LEXIS 26468 *46 (N.D. Cal. 2002).

The specific preemption clause forbids any consumer from bringing a defamation action against a furnisher of credit "based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action . . . . *except* as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. 1681h(e) (emphasis added). Some courts have applied this preemption clause when considering defamation claims, based on the canon of statutory interpretation that a general statute should yield to a specific statute that relates to the same subject matter. See Gorman v. Wolpoff & Abramson, L.L.P., 370 F. Supp. 2d 1005, 1010 (N.D. Cal. 2005); Cisneros v. Trans Union, LLC, 293 F.Supp.2d 1167, 1175 (D. HI 2003).

As with the general preemption clause, consumers cannot maintain defamation claims under the specific preemption clause against furnishers of credit for providing false and inaccurate information to credit reporting agencies. Cisneros v. Trans Union, LLC, 293 F.Supp.2d 1167, 1177 (D. HI 2003). Such allegations relate to conduct that falls squarely within 15 U.S.C. 1681s-2(a), which is exclusively enforceable by federal and state officials, not private individuals. Cope v. MBNA America Bank, N.A., 2006 U.S. Dist. LEXIS 10937 at *24-25 (D. Or. 2006); Cisneros v. Trans Union, LLC, 293 F.Supp.2d 1167, 1177 (D. Hi. 2003). Therefore, defamation claims cannot succeed when couched in alleged violations of 15 U.S.C. 1681s-2(a), regardless of which preemption clause is invoked.

The only state claims a plaintiff may assert under the specific preemption clause are those in which the furnisher of information has failed to reinvestigate a claim, with malice or willful intent to injure such consumer. 15 U.S.C. 1681h(e). Although a defamation action may proceed

when related to an alleged violation of 15 U.S.C. 1681s-2(b), the plaintiff must allege malice or willful intent to injure in order to pursue a claim. <u>Gorman v. Wolpoff & Abramson, L.L.P.</u>, 370 F. Supp. 2d 1005, 1009 (N.D. Cal. 2005). Therefore, failure to allege or demonstrate malice or willfulness is fatal to a claim in the nature of defamation.

    1.    <u>Plaintiff's state law claim of Impairment of Credit is preempted, therefore Count 18 of the complaint should be dismissed.</u>

Plaintiff's Count for Impairment of Credit (Count 18) must be dismissed, as there is no such common law claim. Even if there were such a claim, it would be preempted by the general preemption clause of 15 U.S.C. 1681t(b)(1)(F).

    2.    <u>Plaintiff's Defamation and Libel Per Se claims are preempted, therefore Counts 17 and 19 should be dismissed.</u>

Plaintiff cannot succeed on his defamation and libel per se claims under either the FCRA's general or specific preemption clauses. Under the general preemption clause, Plaintiff is barred completely from bringing any defamation claims as explained in <u>Cope</u>, <u>Roybal</u>, and <u>Davis</u>. Under the specific preemption clause, Plaintiff is barred from bringing any actions in the nature of defamation which are not based on Defendants' willful or malicious behavior as explained in <u>Gorman</u>.

Even if Plaintiff could demonstrate that Defendants had a duty to reasonably investigate the alleged inaccuracies on Plaintiff's credit reports, he cannot succeed on his defamation and libel per se claims because he cannot demonstrate that Defendants acted willfully or with malice. In fact, on both counts, Plaintiff has alleged that Defendants merely acted negligently. Compl. ¶¶ 227, 230, 245, 248. As a result, Defendants are entitled to summary judgment on Counts 17 and 19.

    3.    <u>Plaintiff's claims for Breach of the Covenant of Good Faith and Fair Dealing (Count 15) and Breach of Contract (Count 13) are preempted by the FCRA and must fail as a matter of law.</u>

As explained above, the FCRA does not confer a private right of action against a furnisher of credit who provides false information, since the FCRA expressly reserved this right to governmental agencies. <u>Nelson v. Chase Manhattan Mortgage Corp.</u>, 282 F.3d 1057, 1060 (9th Cir. 2002). In addition, the FCRA's general preemption clause precludes state statutory or common

law causes of action against furnishers of credit for behavior related to the proscribed conduct under 15 U.S.C. 1681s-2. 15 U.S.C. 1681t(b)(1)(F); <u>Davis v Maryland Bank, N.A.</u>, No. 00-04191, 2002 U.S. Dist. LEXIS 26468 at *39 (N.D. Cal. 2002). The FCRA's specific preemption clause similarly prevents causes of action based on allegations that one provided false information to a credit reporting because any claim related to providing false information must be pursued by governmental agencies. <u>Cisneros v. Trans Union, LLC</u>, 293 F.Supp.2d 1167, 1177 (D. HI 2003).

Plaintiff has included claims for breach of contract and violation of the covenant of good faith and fair dealing. His claims rest solely on the allegation that Defendants falsely reported damaging information to credit reporting agencies. Compl. ¶¶ 202, 212. As established by this Court in <u>Nelson</u>, no private right of action exists against furnishers of credit for providing erroneous information. Additionally, the FCRA's general and specific preemption clauses prohibit state statutory and common law claims related to providing erroneous information.

As with Plaintiff's defamation and libel per se claims, Counts 13 and 15 must fail as a matter of law. Plaintiff cannot maintain state claims related to Defendants' alleged failure to provide accurate information to credit reporting agencies. Therefore, there are no issues of genuine material fact and Defendants are entitled to summary judgment.

4.   <u>Plaintiff's Count 14 for Slander of Title must fail as a matter of law.</u>

As explained above, the FCRA preempts all state statutory and common law claims stemming from an allegedly false or inaccurate credit report. The Plaintiff has alleged in Count 14 that Defendants "wrongfully reported timely payments" and failed to take "reasonable steps to properly verify the fraudulent information." Compl. ¶¶ 206-207. Because of the reasons outlined above, Plaintiff cannot maintain an action for inaccurate credit reporting, nor has he proven the necessary facts to show Defendants were under a duty to correct the allegedly false information. As such, his claim for slander of title must fail as preempted by the FCRA.

5.   <u>Defendants are entitled to summary judgment on Plaintiff's Count 12 for Wantonness.</u>

As stated above, Plaintiff's state law claims are preempted under the FCRA. The only claims that appear to evade preemption are defamation claims in which the Plaintiff can prove

4830-5104-7169.1                                    Page 9 of 15

that the furnisher of information has failed to reinvestigate a claim, with malice or willful intent to injure the consumer. 15 U.S.C. 1681h(e); Gorman, supra. Plaintiff's Count 12 alleges wantonness, which itself is not an independent claim. Nevertheless, as in the defamation discussion, supra, Plaintiff can set forth no facts to support that BMW Financial failed to reinvestigate a claim, with malice or willful intent to injure Trout.

> D. **PLAINTIFF'S CLAIM FOR VIOLATION OF NEVADA'S LEMON LAW, NEV. REV. STAT. 597.630, MUST FAIL AS A MATTER OF LAW BECAUSE DEFENDANTS HONORED PLAINTIFF'S DEMAND FOR RETURN AND REIMBURSEMENT OF THE VEHICLE.**

Nevada's Lemon Law allows a consumer to seek replacement or reimbursement of a vehicle if its non-conformities substantially impair the use and value of the vehicle and the manufacturer is unable to conform the vehicle to express warranties after a reasonable number of attempts. Nev. Rev. Stat. 597.630(1). If the vehicle is out of service for at least thirty days over the course of either the warranty period or one year, whichever is less, a presumption arises that a reasonable number of attempts have occurred allowing a consumer to invoke Lemon Law protection. Nev. Rev. Stat. 597.630(2)(b). Additionally, if the same nonconformity is subject to repair four times within the time period above, the same presumption arises. Nev. Rev. Stat. 597.630(2)(a). If a consumer elects a refund for the vehicle rather than a replacement, the consumer is entitled to the "full purchase price including all sales taxes, license fees, registration fees and other similar governmental charges, less a reasonable allowance for his use of the vehicle." Nev. Rev. Stat. 597.630(1)(b).

Nevada's Lemon Law has been applied in only one case, Milicevic v. Mercedes-Benz USA, LLC. 256 F. Supp. 2d 1168 (D. Nev. 2003). In that case, the Plaintiff purchased a new vehicle which spent 55 days in service over the course of seven months, during which time it was subject to repair four times for the same defect. Id. at 1172-1173. Thereafter, the Plaintiff demanded either a replacement vehicle or a refund pursuant to the remedies laid out in Nev. Rev. Stat. 597.630(1). Id. at 1174. Upon receipt of Plaintiff's letter, a Mercedes-Benz customer relations representative contacted her and advised her that the matter would be reviewed at a local level and that she would be contacted shortly. Id. However, no one ever contacted the Plaintiff again, and

her messages to the customer relations representative went unanswered. Id. Consequently, she filed a complaint asserting violation of Nevada's Lemon Law, prevailed, and received a refund less a reasonable allowance for her use of the vehicle. Id. at 1179-1180.

In this case, Plaintiff cannot succeed on his Lemon Law claim against all Defendants[1], because the undisputed facts show that Defendants offered to accept return of the vehicle. Upon receiving Plaintiff's letter asking for a full refund of the vehicle, Defendants immediately began communications between and among themselves to resolve Plaintiff's demand. Unlike in Milicevic, Defendants diligently kept in contact with Plaintiff and his attorney to ensure they remained updated on the status of the dispute. In fact, Defendants sent a letter confirming their investigation into the situation on January 30, 2004. Defendants then followed up with a letter stating their intention to buy back the vehicle on February 25, 2004. A formal offer and settlement agreement followed on March 3, 2004, with a revised settlement agreement sent on March 4, 2004. Neither Plaintiff nor his attorney responded to these offers, which led Defendants to send a final offer and settlement agreement on April 6, 2004 (Letters attached to Schwartz Declaration as Exhibit A).

Defendants not only complied with all of their obligations under Nevada's Lemon Law, they offered Plaintiff more than what the law requires. Defendants offered to reimburse Plaintiff for *all* expenses he incurred for the purchase of the vehicle, including $2000 in attorney's fees, even though the law entitles them to deduct a reasonable allowance for Plaintiff's use of the vehicle. (*See* Schwartz Declaration, Exhibit A.) Recognizing the difficulties that Plaintiff had with the vehicle, Defendants opted to reimburse him in full plus pay attorney's fees as a gesture of good faith rather than account for his use of the vehicle. Had Plaintiff accepted the offer, he would have essentially had free use of a brand new BMW M3 for nearly ten months. Even the Plaintiff in Milicevic, who was ignored and treated with extreme disrespect from the manufacturer of her problematic vehicle that was subject to far more service than Plaintiff Trout's, was charged for her reasonable use of the vehicle.

---

[1] Although this Count has been alleged against all Defendants, it does not pertain to BMW Financial.

Plaintiff has failed to demonstrate any genuine issue of material fact to prove his claim that Defendants violated the Nevada Lemon Law. To the contrary, the facts show that Defendants honored their obligations under the Lemon Law, but Plaintiff refused to accept the payment and buy back offer that he vigorously demanded. Plaintiff's failure to follow through with his own demands does not change the fact that Defendants went above and beyond what they were required to do in order to resolve Plaintiff's dispute. As such, Defendants are entitled to judgment as a matter of law and their motion for summary judgment on Count 3 should be granted.

## IV. CONCLUSION

In sum, Plaintiffs cannot meet their burden under FRCP 56 to point to facts supporting liability on the part of BMW NA, BMW FS, or DESERT BMW on the above claims. As a result, Defendants are entitled to summary judgment on the above-mentioned counts.

Dated this 23 day of June, 2006.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
Michael M. Edwards, Nevada Bar No. 006281
Sheri M. Schwartz, Nevada Bar No. 008657
400 S. Fourth St., Suite 500
Las Vegas, Nevada 89101
Attorneys for Defendants
BMW NORTH AMERICA, LLC,
BMW FINANCIAL SERVICES
DESERT BMW of HENDERSON

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of LEWIS, BRISBOIS BISGAARD & SMITH, LLP and that on this 23rd day of June, 2006, I did cause a true copy of **DEFENDANTS BMW OF NORTH AMERICA, LLC, BMW FINANCIAL SERVICES, AND DESERT BMW OF HENDERSON'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** to be placed in the United States Mail, with first class postage prepaid thereon, and addressed as follows:

Grenville Pridham
1611 East Charleston Blvd., Suite 3
Las Vegas, NV   89104-1859
Attorney for Plaintiff
Christopher Trout

Phone: 614.3388
Fax:    614.3383

By _____
An Employee of
LEWIS BRISBOIS BISGAARD & SMITH LLP