1  **Grenville Pridham, Esq**.
   723 South Third Street
2  Las Vegas, NV 89101
   (702) 614-3388
3  Facsimile: 702-614-3383
   Attorney for Plaintiff
4  Christopher Trout

5             **UNITED STATES DISTRICT COURT**

6             **FOR THE DISTRICT OF NEVADA**

7
   **Christopher Trout,**                          **CASE NO. 2:04-CV-1466-BES-LRL**
8
                              **Plaintiff,**       **PLAINTIFF CHRISTOPHER TROUT'S**
9                                                  **RESPONSE AND OPPOSITION TO**
   **v.**                                          **MOTION FOR SUMMARY**
10                                                 **JUDGMENT, or in the**
   **BMW of NORTH AMERICA, a corporation**         **ALTERNATIVE, PARTIAL SUMMARY**
   **or business entity; BMW FINANCIAL**           **JUDGMENT FILED BY DEFENDANTS**
11 **SERVICES, a corporation or business**
   **entity; DESERT BMW of HENDERSON, a**
12 **Nevada corporation, and DOES 1 through**
   **10, inclusive,**
13
                              **Defendants.**
14
15        Plaintiff, CHRISTOPHER TROUT,  respectfully responds to and opposes **Defendants'**

16 **BMW of NORTH AMERICA, BMW FINANCIAL SERVICES, and DESERT BMW of**

17 **HENDERSON** ["DEFENDANTS"] pending MOTION FOR SUMMARY JUDGMENT, as follows:

18            **PLAINTIFF'S RESPONSE AND OPPOSITION TO**
             **MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS**
19
                              **ARGUMENT**
20
   **A.      COUNTS 11 AND 16 FOR VIOLATIONS**
21         **OF THE FAIR CREDIT REPORTING ACT**

22        Plaintiff stipulates to dismiss Counts 11 and 16 alleging violations of the Fair Credit

23 Reporting Act.

24 **B.      PLAINTIFF'S STATE LAW CLAIMS RELATING TO CREDIT**
           **ARE NOT PREEMPTED BY THE FCRA**
25

26        Plaintiff alleges violations of the Magnuson-Moss Warranty Act — (15 U.S.C. § 2301 et

27 seq.) along with state law causes of action.   Plaintiff would first note that state law claims are not

28 preempted.  Courts have refused to dismiss state law and common law claims in the nature of

negligent credit reporting,[1] defamation, negligent enablement of the imposter,[2] invasion of privacy, etc.[3]  The Fair Credit Reporting Act does not preempt state or common law claims as long as the state or common law is not inconsistent with the Fair Credit Reporting Act.[4]  The Fair

---

[1]      **Amber Dawn Williams v. Experian**, 2002 Westlaw 31133235 [U.S.D.C. E.D. Tex. 2002], citing the decisions in **Whitesides v. Equifax**, 125 F.Supp.2d 807, 813 [U.S.D.C. W.D. La. 2000] [Judge Walter], correcting a misinterpretation of section 1681h[e].  In accord: **Kronstedt v. Equifax**, 2001 U.S.Dist.Lexis 25021 [U.S.D.C. W.D. Wisc. 2001];  **McAnly v. Middleton & Reutlinger, P.S.C.**, 77 F.Supp. 2d 810, 814-815 [U.S.D.C. W.D. Ky. 1999]; **Yeager v. TRW**, 984 F.Supp. 517, 522 [U.S.D.C. E.D. Tex. 1997]; **Retail Credit Co. v. Dade County**, 393 F. Supp. 577, 584 [U.S.D.C. S.D. Fla. 1975], and others.

[2]      **Brown v. Bank One Corp.**, 2002 U.S.Dist.Lexis 22692 [U.S.D.C. N.D. Ill.  2002] ["In this case, similarly, Bank One's alleged misconduct in issuing false loans in Plaintiff' names does not raise a challenge to the information supplied to consumer reporting agencies and, thus, is not regulated by the FCRA.]

[3]      **Sehl v. Safari Motor Coaches, Inc.**, 2001 U.S.Dist.Lexis 12638 [U.S.D.C. N.D. Cal. 2001]; **Whitesides v. Equifax**, 125 F.Supp.2d 807, 813 [U.S.D.C. W.D. La. 2000]; **Dornhecker v. Ameritech Corp.**, 99 F.Supp.2d 918 [U.S.D.C. N.D. Ill. 2000]; **McAnly**, supra; **Olexy v. Interstate Assur. Co.**, 113 F.Supp.2d 1045 [U.S.D.C. S.D. Miss. 2000]; **Mayberry v. Ememessay, Inc.**, 201 F.Supp.2d 687 [U.S.D.C. W.D. Va. 2002]; **Johnson v. Federal Express**, 147 F.Supp.2d 1268 [U.S.D.C. M.D. Ala. 2001]; **Thomasson v. Bank One, Louisiana, N.A.**, 137 F.Supp.2d 721 [U.S.D.C. E.D. La. 2001]; **Amber Dawn Williams**, supra.

[4]      See, for example, **Credit Data of Arizona, Inc. v. State of Arizona**, 602 F.2d 195 [C.A. Ariz. 1979].

1  Credit Reporting Act does not preempt a state law cause of action for defendant's negligence in

2  communicating erroneous credit data about a consumer.[5]

3       Most recently, in April, the court in **Roybal v. Equifax**, Slip Copy, 2006 WestLaw 902276

4  [U.S.D.C. E.D. Cal. 2006] [April 4, 2006], held that: "Resolution of this issue begins with a plain

5  reading of the text of the FCRA. Specifically, Section 1681t deals with preemption of state laws

6  and provides as follows: "No requirement or prohibition may be imposed under the laws of any

7  State (1) with respect to any subject matter regulated under section 611 [§1681i], relating to the

8  time by which a consumer reporting agency must take any action, including the provision of

9  notification to a consumer or other person, in any procedure related to the disputed accuracy of

10  information in a consumer's file, except that this subparagraph shall not apply to any State law in

11  effect on the date of enactment of the Consumer Credit Reporting Reform Act of 1996. [enacted

12  September 30, 1996]" 15 U.S.C. §1681t(b)(1)(B).  The foregoing clarifies that state laws which

13  impose requirements or prohibitions relating to the procedure of resolving disputed credit entries

14  in effect on September 30, 1996, are not preempted. The Defendants contend, however, that

15  Section 1681h(e) is a more specific provision that expressly precludes common law causes of

16  action for defamation, invasion of privacy and negligence.  In fact, Section 1681h(e) provides as

17  follows:

18  > Except as provided in sections 616 and 617 [§1681n and 1681o] of this title, no
19  > consumer may bring any action or proceeding in the nature of defamation, invasion
    > of privacy, or negligence with respect to the reporting of information against any
20  > consumer reporting agency, any user of information, or any person who furnishes
    > information to a consumer reporting agency, based on information disclosed
21  > pursuant to section 609, 610, or 615 [§1681g, 1681h, or 1681m] of this title or
    > based on information disclosed by a user of a consumer report to or for a consumer
22  > against whom the user has taken adverse action, based in whole or in part on the
    > report, except as to false information furnished with malice or willful intent to injure
    > such consumer.
23

24  A fastidious reading of this section reveals that it applies only to causes of action based on

25  information disclosed to consumers [15 U.S.C. §§ 1681g], the conditions and forms of

26  _____

27  [5]       **Hughes v. Fidelity Bank**, 709 F.Supp. 639 [U.S.D.C.  E.D. Pa. 1989]; **Equifax**

28  **Services, Inc. v. Cohen**, 420 A.2d 189 [Me. 1980], cert. denied, 450 U.S. 916 [1981].

1   disclosures to consumers [15 U.S.C. §§ 1681h] and requirements on users of consumer reports

2   [15 U.S.C. §§ 1681m].   As was aptly explained in **Whitesides v. Equifax Credit Info. Servs .**,

3   Section 1681h(e) is not actually a preemption provision.   Rather, it is a grant of protection for

4   disclosures mandated under Section 1681g, 1681h and 1681m.   See **Whitesides v. Equifax**

5   **Credit Info. Servs.**, 125 F.Supp.2d 807, 811 (D. La.2000).   The disclosures contemplated by

6   1681h(e) are not at issue in this case.   Particularly, Plaintiff does not contend that the

7   Defendants improperly disclosed information to them or improperly used Plaintiff's credit report.

8   The Court in **Whitesides** wrote:

9       However, the acts of BOL [defendant], particularly the reporting of th Whitesides
        account to consumer reporting agencies, do not fall within the ambit of disclosures
10      considered by 1681(e).   Therefore, the necessity of malice or willful intent is
        obviated.  Accordingly, 1681h(e) does not preclude any of the Whitesides's claims
11      [negligence, defamation, intentional infliction of emotional distress, and unfair trade
        practices].

12

13  Consequently, the Court found in **Whitesides** that Section 1681(h)(e) does not preempt

14  Plaintiff's State Claims.

15      Historically, courts accepted the industry's position that section 1681h[e] provided a "safe

16  harbor" and "qualified immunity" from certain state law actions.  Over time that position has

17  begun to be shown as flawed.   **Kronstedt v. Equifax**, 2001 U.S.Dist.Lexis 25021 [U.S.D.C.

18  W.D. Wisc. 2001]; **McAnly v. Middleton and Reutlinger, P.S.C.**, 77 F.Supp. 2d 810, 814

19  [U.S.D.C. W.D. Ky. 1999]; **Retail Credit Co. v. Dade County**, 393 F.Supp. 577 [U.S.D.C. Fla.

20  1975] [quoting Sen. Proxmire in colloquy with Sen. Javits, 115 Cong.Rec. 13908 [November 6,

21  1969]].[6]  Unfortunately, the issue has not been squarely presented to our appellate courts or the

22  Supreme Court.

23      As in the **Whitesides** and **Williams** cases, this Honorable Court should reject

24  defendants'[7] arguments that plaintiff's claims were preempted or barred.  Like here, plaintiff's

25  _____

26      [6]      Also see: **Carriere v. Proponent Federal Credit Union**, Not Reported in

27  F.Supp.2d, 2004 WestLaw 1638250 [U.S.D.C. W.D. La. 2004].

28      [7]      Both defendants, a furnisher and a consumer reporting agency, making motions.

claims and damages arose from communications <u>not directly with the plaintiff</u> but with other third parties.  In sum, section 1681h[e] only affects claims where the claim arises from communications <u>between the defendant and the consumer</u>.  While the FCRA is "no model of clarity,"[8] this interpretation makes sense and no other interpretation gives meaning to the language of the statute.[9]

The state and common law claims are not limited, preempted or barred by the FCRA. **Whitesides**, supra; **McAnly v. Middleton & Reutlinger, P.S.C.**, 77 F.Supp.2d 810 [U.S.D.C. W.D. Ky. 1999]; **Hughes v. Fidelity Bank**, 709 F.Supp. 639 [U.S.D.C.  E.D. Pa. 1989]; **Equifax Services, Inc. v. Cohen**, 420 A.2d 189 [Me. 1980], cert. denied, 450 U.S. 916 [1981]; **Retail Credit Co. v. Russell**, [1975], 218 S.E.2d 54, 234 Ga. 765, at 767; **Thomas v. Equifax, Inc.**,

---

[8]     **McAnly v. Middleton & Reutlinger, P.S.C.**, 77 F.Supp.2d 810 [U.S.D.C. W.D. Ky. 1999].

[9]     The appellate circuits, following the United States Supreme Court in **U.S. v. Menasche**, 348 U.S. 528, 538-39 [1955], and **Matthiesen v. Banc One Mortgage Corp.**, 173 F.3d 1242 [10th Cir. 1999] "[I]t is our duty to give effect, if possible, to every clause and word of a statute.".  It is "a **cardinal principle of statutory construction**" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, **no clause, sentence, or word shall be superfluous, void, or insignificant**." Citing **Duncan v. Walker**, 533 U.S. 167 , 121 S.Ct. 2120, 2125, 150 L. Ed. 2d 251 [2001], **Montclair v. Ramsdell**, 107 U.S. 147, 152, 27 L. Ed. 431, 2 S. Ct. 391 [1883].  In **Andrews**, the court, addressing another provision in the FCRA, section 1681p, added: "'[W]ere we to adopt [Andrews'] construction of the statute,' the **express exception would be rendered "insignificant, if not wholly superfluous**." **Duncan**, 533 U.S. at , 121 S.Ct. at 2125. We are 'reluctant to treat statutory terms as surplusage in any setting,' 121 S. Ct., at 2125." **TRW Inc. v. Andrews**, 534 U.S. 19, 122 S.Ct. 441, 151 L.Ed.2d 339, 2001 U.S.Lexis 10306 [2001].

1   142 Ga.App. 422, 236 S.E.2d 154; 16 C.F.R.App. to Pt. 610 – Condition of Disclosure, p.6 ["the

2   privilege extended by [s.1681h[e]] **does not apply** to an action brought by a consumer if the

3   action is based on information **not disclosed pursuant to Sections [1681g, 1681h, or 1681m]**];

4   **Baxter v. Reliable Oldsmobile, Inc.**, 1986 Westlaw 13584 [Ohio App.] Nov. 26, 1986 [Dissent];

5   16 C.F.R.App. to Pt. 610 – Condition of Disclosure, p.6 ["the privilege extended by [s.1681h[e]]

6   does not apply to an action brought by a consumer if the action is based on information not

7   disclosed pursuant to Sections [1681g, 1681h, or 1681m]].

8        In **Whitesides**, supra, the court found that Section 1681h[e] of the Fair Credit Reporting

9   Act did not bar any state or common law claims *except those based upon communications*

10  *directly by the consumer reporting agency to the consumer*.  In **Whitesides**, the Court reviewed

11  the provision and found that consumer credit reports issued by any consumer reporting agency

12  to its subscribers *are not reports disclosed "pursuant to Section 1681g, 1681h, or 1681m of this*

13  *title. . . ."*  Section 1681h[e] deals with consumer credit reports which are *issued directly to a*

14  *consumer*.  It makes sense that if a credit reporting agency sent a credit report directly to the

15  consumer then that consumer should not be able to file an action against the credit reporting

16  agency, based upon that report, unless plaintiff could show malice or willful intent to injure the

17  consumer.  Section 1681h[e] has likewise been interpreted by other Courts. Id.

18       Here, plaintiff complains of false reportings issued by the furnisher to the agencies and

19  from the agencies onto third party subscribers who then denied credit to plaintiff.  Plaintiff

20  suffered credit denials and other adverse affects which naturally and foreseeably flowed through

21  the reporting of false and derogatory credit information about plaintiff which was wrongfully

22  supplied by the furnisher defendants and re-reported on a number occasions by the consumer

23  reporting agency defendants.  As plead, the consumer reporting agencies act as the authorized

24  agents and mouthpieces for the creditors/furnishers/ subscribers to whom they provide reporting

25  and data access services.

26       The defendants also suggest that 15 U.S.C. 1681t[b][1][F] preempts all state law actions.

27  Section 1681t[b][1][F], as written, is about as clear as the mission of the Homeland Security

28  program in America.  Unfortunately, Congress has been in charge of both that mission and the

1  drafting of Section 1681t[b][1][F].  Below, plaintiff will show that The defendants's interpretation

2  of 1681t[b][1][F] is overreaching and contrary to consumer interests.

3       A plain reading of the statute discloses that Section 1681t[b][1][F] does not preempt any

4  of the claims brought by plaintiff.  By its language, 1681t limitations **do not apply to** "any

5  provision of State law [including any provision of a state constitution] that: [A] is enacted after

6  January 1, 2004; [B] states explicitly that the provision is intended to supplement this title; and

7  **gives greater protection to consumers than is provided under this title**. [emphasis added]."

8       Section 1681t, as part of the amended Fair Credit Reporting Act which became effective

9  in September, 1997, sought to insure that the Courts understood that Plaintiff-consumers had all

10  rights affording greater protections than those provided in the Fair Credit Reporting Act.  In fact,

11  section 1681s-2[b] is in no way a comprehensive set of protections and rights for plaintiff or other

12  consumers. 1681t addresses statutory laws [mini-credit reporting acts] which could be imposed

13  in an effort to regulate the consumer credit reporting industry in their reinvestigation processes

14  but was never intended to address or preclude common law or state law claims for damages[10] for

15  negligence, defamation, invasions of privacy, and other similar torts.  Nor was it intended to

16  address consumer protection statutes, deceptive trade practice claims, or breach of contract

17  claims, etc.

18       Section 1681t[a] reads: "[a] In General.  Except as provided in subsections [b] and [c], this

19  **title does not annul, alter, affect, or exempt any person** subject to the provisions of this title

20  **from complying with the laws of any state with respect to the <u>collection</u>, <u>distribution</u>, or**

21  **<u>use</u> of any information on consumers**, except to the extent of those laws are inconsistent with

22  any provision of this title, and then only to the extent of the inconsistency."

23       Further, 1681t[b] then provides: "[b] General Exceptions.   No requirement or prohibition

24  may be imposed under the laws of any state:

25  _____

26       [10]    Damages under the FCRA do not require the same elements as independently

27  required by state law tort claims. **Smith v. Law Office of Mitchell N. Kay**, 124 B. R. 182, 188

28  [U.S.D.C. Del. 1991].

[1] With respect to any subject matter regulated under: ...

    (F)      section 623 [1681s-2], relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [I] with respect to Section 54A[a] of chapter 93 of the Massachusetts Annotated Laws [as in effect on the date of enactment of the Consumer Credit Reporting Reform Act of 1996]; or [ii] with respect to section 1785.25[a] of the California Civil Code [as in effect on the date of enactment of the Consumer Credit Reform Act of 1996]; . . . ."

Plaintiff has not asserted a statutory claim under a state law provision similar or addressing the same matters as 1681s-2, i.e., the reinvestigation duty provided under the FCRA as to the furnisher.  This provision reinforces plaintiff's interpretation of 1681t by specifically addressing state law statutory counterparts to the FCRA. Id.

      Section 1681t[b][1][F] came in as one of the new provisions in the FCRA amendments, effective September 30, 1997, and without any doubt, a most unusual provision designed to appease industry.  While the legislative history and testimony show that Congress did not intend to displace state tort, contract, and common law actions, this section has received some misinterpretation in select cases.  In fact, this section was only intended to displace and preempt state mini-credit reporting acts [except Massachusetts and California by specific reference] and similar statutory laws designed to address credit reporting functions.  Congress bought into industry argument that industry needed several years to try and attain uniformity in practice and upgrades.  Industry wanted a reprieve from the many and varied state laws which had been enacted to gap-fill the many deficiencies in the FCRA, 15 U.S.C. 1681, et. seq.  Industry used the same argument in asking Congress to enact FACTA, the 2003 amendment to the FCRA, much of which took effect in March, 2004.

      The problem with the 1996 enactment of section 1681t[b][1][F] first arose in the **Carney v. Experian**[11] where the District Court found no private right of action under section 1681s-2[b] and

---

    [11]    57 F.Supp.2d 496 [U.S.D.C. W.D. Tenn. 1999].

further found no state law claims citing section 1681t[b][1][F] as an absolute bar.  The **Carney**

decision has received much due negative attention and criticism by courts[12] and commentators.

Following **Carney v. Experian**, roughly over 100 District Courts and three Courts of Appeals

disagreed with **Carney** and found a private right of action under section 1681s-2[b].[13]

Unfortunately, another court locked onto **Carney** and, though unnecessary, found that section

1681t[b][1][F] preempted all state laws. **Quigley v. Pa. Higher Education Assistance Agency**.[14]

Thereafter, the Eastern District of Pennsylvania, in **Jaramillo v. Experian** faced the issue

and the court initially accepted the defendant's position and found that two prior courts accepted

the preemption argument.  The court dismissed plaintiff's state law claims.[15]  Plaintiff moved for

reconsideration and further briefing occurred, which included the arguments made by Plaintiff

herein.  The Judge reversed himself though, oddly, the Federal Supplement Reporter system did

not report the reversal and has left the reversed ruling on the books.[16]  The court reinstated

plaintiff's state law claims which had been rejected under section 1681[b][1][F].

---

[12]      Judge Cobb disagreed with **Carney**'s result in **Campbell**, supra.

[13]      See, ex.: **Johnson v. MBNA America Bank, NA**, 357 F.3d 426 [4th Cir.  2004]

[Va.]; and  **Nelson v. Chase Manhattan Bank**, 282 F.3d 1057 [9th Cir. 2002].  The Nelson

decision was followed by other panels of the United States Ninth Circuit Court of Appeals in

**Sharron v. NMAC**, 2002 U.S.App.Lexis 16317, 44 Fed.Appx. 157 [9th Cir. 2002]; and **Bishop v.**

**U.S. Bancorp**, 91 Fed.Appx. 583, 2004 WestLaw 557299 [9th Cir.  2004] [Nev.].  Notably even

the Sixth Circuit questioned the holding of **Carney**: **Downs v. Clayton Homes, Inc.**,

88 Fed.Appx. 851, 2004 WestLaw 253363 [6th Cir.  2004] [Tenn.] ["assumed" that 1681s-2[b]

provides a private right of action].

[14]      2000 U.S.Dist.Lexis 19847, 2000 Westlaw 1721069 [U.S.D.C. N.D. Cal. 2000].

[15]      155 F.Supp.2d 356 [U.S.D.C. E.D. Pa. 5/21/01].

[16]      2001 U.S.Dist.Lexis 10221[U.S.D.C. E.D. Pa. 6/20/01].

1    Beginning in 1999, there was a second line of cases which began reporting in stark

2   contrast to **Carney v. Experian**, supra. The second line of cases help that section 1681t was

3   nothing more than a provision to preempt state mini-credit reporting statutes so as to allow the

4   industry a limited window of time to attain uniformity in its practices and avoid the patchwork of

5   state statutes which were necessary to gap fill the FCRA's deficiencies.  These courts have

6   refused to dismiss state law and common law claims in the nature of negligent credit reporting,[17]

7   defamation, invasion of privacy, etc.[18]  It is clear that most courts seek to limit the effect of

8   Section 1681t[b][1][F] and to enforce consumer rights, as contemplated by Congress.[19]  The

9   _____

10          [17]          **Amber Dawn Williams v. Experian**, 2002 Westlaw 31133235 [U.S.D.C. E.D. Tex.

11   8/02] [Judge John Ward], which also adopted the decision in **Whitesides v. Equifax**, 125

12   F.Supp.2d 807, 813 [U.S.D.C W.D. La. 2000], correcting a misinterpretation of section 1681h[e].

13          [18]          **Sehl v. Safari Motor Coaches, Inc.**, 2001 U.S.Dist.Lexis 12638 [U.S.D.C. N.D. Cal.

14   2001]; **Whitesides v. Equifax**, 125 F.Supp.2d 807, 813 [U.S.D.C. E.D. Tex. 2000]; **Dornhecker**

15   **v. Ameritech Corp.**, 99 F.Supp.2d 918 [U.S.D.C. N.D. Ill. 2000]; **McAnly**,  77 F.Supp.2d 810

16   [U.S.D.C. W.D. Ky. 1999]; **Olexy v. Interstate Assur. Co.**, 113 F.Supp.2d 1045 [U.S.D.C. S.D.

17   Miss. 2000]; **Mayberry v. Ememessay, Inc.**, 201 F.Supp.2d 687 [U.S.D.C. W.D. Va. 2002];

18   **Johnson v. Federal Express**, 147 F.Supp.2d 1268 [U.S.D.C. M.D. Ala. 2001]; **Thomasson v.**

19   **Bank One, Louisiana, N.A.**, 137 F.Supp.2d 721 [U.S.D.C. E.D. La. 2001]; **Amber Dawn**

20   **Williams**, 2002 Westlaw 31133235 [U.S.D.C. E.D. Tex. 8/02] [Judge John Ward].

21          [19]          See, ex., **Nelski v. Ameritech**, 2004 WestLaw 1460001 [Mich. App. June 29, 2004]

22   ["The FCRA generally and §1681t(b)(1)(F) specifically were not intended to broadly protect credit

23   card companies. Rather, as its stated findings suggest in § 1681(a), Congress purported to

24   expand consumer protection and not shrink it as such a broad interpretation of § 1681s-2 would

25   do."]; **Larobina v. First Union Nat. Bank**, 2004 WestLaw 1664230 [Conn. Super. June 28, 2004]

26   [refusing to apply 1681s-2 and 1681t[b][1][F] to plaintiff's state law claims].

court in the Western District of Louisiana was one of those courts.   **Whitesides v. Equifax**, 125

F.Supp.2d 807, 813 [U.S.D.C W.D. La. 2000].

Yet, despite the weight of authority rejecting defendant's [industry's extreme] position of

preemption of all claims, a couple of courts have chosen to follow the ill founded **Carney** trail.[20]

Still yet, a third line of cases developed trying to find some middle ground in the confusion.[21] The

**Mendoza** decision followed a theory that 1681t[b][1][F] has a "temporal effect" and that the only

possible "immunity" prior to notice to the furnisher per 1681s-2 is that qualified immunity the court

held to exist under 1681h[e].[22]   That is precisely the view of the defendant in its moving papers.

The problem with The defendants's view, under the **Mendoza** case and that line of cases is that

the "temporal effect" is inconsistent with the language in the statute and fails to consider the

manner in which the FCRA is to be interpreted.  The Fair Credit Reporting Act was enacted to

protect consumers/Plaintiff from the consumer reporting agencies/furnishers/users/defendants,

not vice-versa.  The FCRA is supposed to receive a liberal construction in favor of consumers,

not in favor of the credit and credit reporting industries. **Guimond v. Trans Union Credit Info.**

**Co.**, 45 F.3d 1329 [9th Cir. 1995] [Cal.]; **Klapper v. Shapiro**, 586 N.Y. S.2d 846 [N.Y. Sup. 1992];

**Kates v. Croker Nat. Bank**, 776 F.2d 1396, 1397 [9th Cir. 1995]; **Jones v. Federated Fin. Res.**

**Corp.**, 144 F.3d 961 [6th Cir. 1998] [Mich.].  Further, the appellate circuits, following the United

States Supreme Court in **U.S. v. Menasche**, 348 U.S. 528, 538-39 [1955], and **Matthiesen v.**

**Banc One Mortgage Corp.**, 173 F.3d 1242 [10th Cir. 1999], have held that "[I]t is our duty to give

---

[20]   **Aklagi v. NationsCredit Financial Services Corp.**, 196 F.Supp.2d 1186 [U.S.D.C.

Kan. 2002] [Court tried to coin section 1681t as an "absolute immunity" provision]; **Hasvold v.**

**First USA Bank, N.A.**, 194 F.Supp.2d 1228 [U.S.D.C. Wyo. 2002]; and **Vasquez-Garcia v.**

**Trans Union de Puerto Rico**, 2002 Westlaw 31094882 [U.S.D.C. P.R. 2002].

[21]   "This schism has led to some confusion in the courts." **Mendoza v. Experian**, 2003

U.S.Dist.Lexis 7121, at *12 [U.S.D.C. S.D. Tex. 2003].

effect, if possible, to every clause and word of a statute.".  It is "a **cardinal principle of statutory construction**" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, **no clause, sentence, or word shall be superfluous, void, or insignificant**." Citing **Duncan v. Walker**, 533 U.S. 167 , 121 S.Ct. 2120, 2125, 150 L. Ed. 2d 251 [2001], **Montclair v. Ramsdell**, 107 U.S. 147, 152, 27 L. Ed. 431, 2 S. Ct. 391 [1883].   In Andrews, the court, addressing another provision in the FCRA, section 1681p, added: "'[W]ere we to adopt [Andrews'] construction of the statute,' the **express exception would be rendered "insignificant, if not wholly superfluous**." **Duncan**, 533 U.S. at , 121 S.Ct. at 2125. We are 'reluctant to treat statutory terms as surplusage in any setting,' 121 S. Ct., at 2125." **TRW Inc. v. Andrews**, 534 U.S. 19, 122 S.Ct. 441, 151 L.Ed.2d 339, 2001 U.S.Lexis 10306 [2001].

Under the temporal effect approach, once notice is provided per 1681s-2 to the furnisher, the **Mendoza** court noted that the furnisher would have "absolute immunity" from state law claims which were brought concerning matters governed by 1681s-2.  Thus, **there are at least three lines of cases**: [1] no immunity whatsoever from state and common law claims [pro consumer and consistent with the statute]; [2] temporal effect of "immunity" under 1681h[e] then 1681t[b][1][F] [a strained interpretation and fall back position for industry]; and [3] absolute immunity from all state and common law claims [industry's extreme position].   Arguably, as a **fourth line of cases** considers 1681h[e] to apply only to "torts" while 1681t[b][1][F] applies only to statutory violations/non-torts.  **Jeffery v. Trans Union, LLC**, 273 F.Supp.2d 725 [U.S.D.C. E.D. Va. 2003]; **Carlson v. Trans Union, LLC**, 259 F.Supp.2d 517 [U.S.D.C. N.D. Tex. 2003]. Discussed by **McCloud v. Homeside Lending**, 2004 WestLaw 585861 [U.S.D.C. N.D. Ala. 2004].   Again, this is strained, at best.  **McCloud** ignored the pro-consumer line of cases.  Of course, arguably the **fifth line of cases** focus on whether the subject matter is within the limited confines of Section 1681s-2 and those courts hold that Section §1681t(b)(1)(F) generally preempts state law pertaining to matters regulated under §1681s-2.  **Gordon v. Greenpoint Credit**, 266 F.Supp.2d 1007, 1012 [U.S.D.C. S.D. Iowa 2003]; **Yutesler v. Sears Roebuck & Co.**, 263 F.Supp.2d 1209, 1211 [U.S.D.C. Minn. 2003].

1    Plaintiff asserts that the industry has taken the extreme approach with a fall back position

2    of temporal effect.   The only plausible reading of 1681h[e] and 1681t[b][1][F], when construed

3    liberally and in favor of the consumer [which Congress chose to protect with the Act] is to find

4    that 1681t is not intended and was never intended to preempt anything other than mini-credit

5    reporting acts enacted by states over time which had created a hodge-podge, patchwork of gap

6    filling the FCRA.   That is precisely how industry sold 1681t to Congress in the 1996 Amendments

7    and in the 2003 FACTA amendment.

8    Receipt of the notice of a dispute is not the "line in the sand" that Congress laid in sections

9    1681h[e] and 1681t[b][1][F].   Industry should not be awarded for misleading Congress in its lobby

10   efforts.   Congress envisioned giving consumers greater rights to combat the growing problems

11   with credit report errors, not to strip the consumers of their common law causes of actions and

12   non-mini credit reporting act claims.   Interpreting section 1681t[b][1][F] as taking away rights of

13   the consumer is inconsistent where the statute does not say so.   Judge Walter, carefully

14   considered the arguments in **Whitesides**, an identity theft victim case, and found, in both

15   opinions, that Congress did not intend to take away consumer rights and further that section

16   1681h[e] applied only to limited types of communications under sections 1681g, 1681h and

17   1681m, which like in **Whitesides**, are not the complained of communications here.

18   In May 2006, a District Court in Massachusetts wrote a lengthy discussion concerning the

19   meaning and interpretation of Section 1681h(e).    See **Islam v. Option One Mortgage Corp**,

20   432 F. Supp. 2d 181 (D. Mass. 2006).   The court in **Islam**, was persuaded by the opinion in

21   **Webb v. Bob Smith Chevrolet, Inc**., No. Civ A. 3:04 CV 66H, 2005 WL 2065237, at 4-5 (W.D.

22   Ky. 1999) and adopted the conclusion that "**Section 1681h(e) is not a preemption provision at**

23   **all**." (Emphasis added, Islam, id, at 193.)    The court in **Islam**, then went on to cite to **McAnly**,

24   77 F. Supp. 2d at 814, quoting with approval that Section 1681h(e) is "a *quid pro quo* grant of

25   protection for statutorily required disclosures."

26   The court in **Islam** goes on to discuss whether the defendant had any particular duty to

27   the plaintiff for the negligence that was alleged.    The court concluded that "[g]iven the

28   uncertainty surrounding the existence of a negligence duty in Massachusetts law in the context of

1  debt collection by a secured creditor bank, it is prudent at this stage to deny Option One's motion

2  to dismiss the Islam's negligence claims."  Islam, id, at 198.

3        In June 2006, a District Court in Maryland found that a common law defamation claim was

4  not pre-empted by the FCRA.  **Beuster v. Equifax Information Services**, ___ F. Supp. 2d ___ ,

5  2006 WL 1669790, (D. Md. 2006).  Plaintiff Trout has alleged in paragraph 66, "Upon information

6  and belief, the manufacturer and its financial services subsidiary have a corporate policy of

7  punishing customers who invoke their rights and remedies under the Lemon Law by delaying the

8  buy-back and demanding that the customer continue to make payments on a vehicle which does

9  not work or suffer having a derogatory comment placed in the customer's consumer credit

10 report."  In Count 12 of Plaintiff Trout's complaint he alleges that the defendants wantonly

11 published the false information about his credit when he sought to invoke his lemon law remedy.

12        **1.    Impairment of Credit is a common law claim that should not be preempted.**

13       The Nevada Supreme Court discussed impairment of credit in **Dodge Bros. v. General**

14 **Petroleum Corp**.,  54 Nev. 245, 250, 255, 256 (1932).  Implicit in the court's discussion of

15 "impairment of credit" is the notion that Nevada does recognize a cause of action for impairment

16 of credit.

17        **2.    Defamation and Libel per se are not preempted as discussed above.**

18       Plaintiff Trout alleges in paragraphs 65 and 66  that the defendants conspired to have a

19 derogatory comment placed on customer's consumer credit report if they invoke their rights and

20 remedies under the Lemon Law.  Plaintiff Trout further alleges that the defendants have a

21 corporate policy of punishing customers who invoke their rights and remedies under the Lemon

22 Law by delaying the buy-back and demanding that the customer continue to make payments on

23 a vehicle which does not work or suffer having a derogatory comment placed in the customer's

24 consumer credit report.  Trout's causes of action for defamation and libel per se should be

25 allowed to proceed to trial.

26

27

28

1        **3.     Breach of Contract and Breach of the Covenant of Good Faith and Fair**
         **Dealing are not mentioned in Section 1681h(e)**

2

3        Plaintiff Trout's causes of action for breach of contract and breach of the covenant of good

4   faith and fair dealing are not even mentioned in the Fair Credit Reporting Act, Section 1681h(e),

5   therefore defendants' argument that it is preempted is meritless.  Plaintiff Trout's causes of

6   action for breach of contract and breach of the covenant of good faith and fair dealing have more

7   to do with the manner in which the defendants mistreated Mr. Trout when he attempted to invoke

8   his lemon law remedy.

9        The defendants breached their contract with Mr. Trout to provide a safe a reliable car.

10  The defendants breached their contract with Mr. Trout to honor the warranty when the car

11  became disabled.  The defendants then breached the covenant of good faith and fair dealing by

12  berating Mr. Trout and accusing him of stealing a tool that had never been placed in the vehicle;

13  by refusing to timely repair the car when it went into the shop; refusing to honor the warranty; and

14  the refusing to abide by Nevada's Lemon Law; and then finally by telling Mr. Trout they will buy

15  back the car only after they have reported false information to the major credit reporting

16  agencies.  These are pendent state court causes of action that have nothing to do with the Fair

17  Credit Reporting Act, nor with any aspect of what the act regulates.

18       **4.     Defendants slandered the title to the car when they conducted a**
         **repossession**

19

20       For the reasons set for in **Islam** and **Beuster**, supra, and the other cases discussed in the

21  preemption section of this brief, this cause of action is not ripe for summary judgment either.

22

23  **C.     PLAINTIFF TROUT'S CLAIM FOR A VIOLATION OF NEVADA'S LEMON LAW IS STILL**
    **VIABLE BECAUSE THE DEFENDANTS HAVE FAILED TO REIMBURSE PLAINTIFF**.

24

25       This part of defendant's brief has a Twilight Zone feeling to it because the defendants

26  have failed to reimburse Plaintiff Trout for anything.   The defendants made one offer,

27  purportedly under the Lemon Law, without disclosing how they determined the dollar amount.

28

1    See documents numbered BMW0025 and BMW0026.   The defendants then made a second

2    offer for less than the first offer.  See documents BMW0027.

3         Then after the defendants reduced the dollar amount that they were willing to reimburse

4    Plaintiff Trout, the defendants placed a condition on the reimbursement; requiring Plaintiff Trout

5    to release the defendants from all claims for any wrong doing by defendants.  The defendants

6    knew they had placed false information on his credit file and took no effort to remove the

7    information, yet demanded that Plaintiff Trout accept less than he is entitled to under Nevada's

8    Lemon Law.

9         Nevada's Lemon Law does not state any where that the remedies set forth in NRS

10   597.630 *et seq.*, shall only be provided to a consumer after the consumer releases an

11   automobile manufacturer from all liability.

12        The fact that the defendants made a conditional offer, purportedly, pursuant to Nevada's

13   Lemon Law, does not remove Plaintiff Trout's cause of action for a violation of Nevada's Lemon

14   Law.  The defendants never tendered full payment of all the items for which Mr. Trout is entitled

15   to reimbursement.   It is absurd to suggest that a defendant should have summary judgment

16   granted for a cause of action because the defendant made a conditional offer to settle that the

17   plaintiff did not accept.  The defendants left Mr. Trout in a position where he is still liable for more

18   than $50,000 on the note for the car lease, and is owed more than $15,000 under the Lemon

19   Law.

20                                      **Conclusion**

21        Plaintiff submits that Defendants' motion should be denied, except for the stipulated

22   dismissal of Counts 11 and 16.

23                              Respectfully submitted, on this 1st day of August 2006.

24

25                              /s/  Grenville Pridham
                                _____
                                **Grenville Pridham, Esq**.

26                              723 South Third Street
                                Las Vegas, NV 89101

27                              (702) 614-3388
                                Facsimile: 702-614-3383

28                              Attorney for Plaintiff, Christopher Trout

1

**<u>CERTIFICATE of SERVICE</u>**

2      I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed, by

3  ECF and  first class mail, properly addressed, with prepaid postage affixed, to opposing counsels

4  of record, on this the 1st  day of August 1, 2006.

5

6  LEWIS BRISBOUS BISGAARD & SMITTH LLP
Sheri M. Schwartz, Esq.
7  400 South Fourth Street, Suite 500
Las Vegas, Nevada 89101

8  Attorney for Defendants
DESERT BMW of HENDERSON,
9  BMW of NORTH AMERICA and
BMW FINANCIAL SERVICES
10  Phone: (702) 893-3383
Fax: (702) 893-3789

11

12                                              /S/ Grenville Pridham

13                                              _____
**Grenville Pridham**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28