MICHAEL M. EDWARDS
Nevada Bar No. 006281
SHERI M. SCHWARTZ
Nevada Bar No. 008657

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
400 South Fourth Street, Suite 500
Las Vegas, Nevada 89101
(702) 893-3383
FAX: (702) 893-3789

Attorneys for Defendants
BMW OF NORTH AMERICA, LLC;
BMW Financial Services NA, LLC; and
JRJ INVESTMENTS, INC. dba DESERT BMW of HENDERSON

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER TROUT,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, a corporation or business entity; BMW FINANCIAL SERVICES, a corporation or business entity; DESERT BMW of HENDERSON, a Nevada corporation, and DOES I through 10, inclusive,<br><br>Defendants. | CASE NO. 2:04-CV-1466 BES (LRL)<br><br>**E-FILE** |

**DEFENDANTS BMW OF NORTH AMERICA, LLC, BMW FINANCIAL SERVICES, AND DESERT BMW OF HENDERSON'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendants BMW of NORTH AMERICA, LLC, BMW FINANCIAL SERVICES, and DESERT BMW OF HENDERSON, by and through their counsel, Michael M. Edwards and Sheri M. Schwartz of Lewis Brisbois Bisgaard & Smith, LLP, hereby submit their reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.

///

4810-9244-2625.1

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

A.   **PLAINTIFF'S STATE LAW CLAIMS RELATED TO CREDIT BUREAU REPORTING ARE PREEMPTED UNDER EITHER THE SPECIFIC OR GENERAL PREEMPTION PROVISIONS OF THE FCRA.**

While Plaintiff's ability to compose a virtual law journal article regarding the state of the law on preemption under the FCRA is impressive, Plaintiff has ignored the weight of authority within *our own* jurisdiction that has addressed the issue. District courts in Northern California, Eastern California, Oregon, and Hawaii have all concurred within the past four years that the preemption provisions in the FCRA bar any state claims related to credit reporting by a furnisher of credit. See Cope v. MBNA America Bank, N.A., 2006 WL 655742, 2006 U.S. Dist. LEXIS 10937 (D. Or. 2006); Roybal v. Equifax, 405 F. Supp. 2d 1177 (E.D. Cal. 2005); Gorman v. Wolpoff & Abramson, L.L.P., 370 F. Supp. 2d 1005, 1010 (N.D. Cal. 2005); Cisneros v. Trans Union, LLC, 293 F.Supp.2d 1167 (D. Hi. 2003); Davis v Maryland Bank, N.A., 2002 WL 32716429, 2002 U.S. Dist. LEXIS 26468 (N.D. Cal. 2002).

Defendants have made an effort to spare this court from a lengthy dissertation regarding other jurisdictions' approaches to the issue at hand, but can positively state that our position sides with the majority of courts. Davis, 2002 WL 32716429 at *12, 2002 U.S. Dist. LEXIS 26468 at *39. Without expounding on the repetitive logic found in other court opinions, Defendants refer the court to Davis which cites to decisions from the district courts in Kansas, Wyoming, Pennsylvania, Tennessee, Virginia, and Maryland, all agreeing that the FCRA preempts state statutory and common law claims.[1] Id.

Plaintiff has referred to several other cases within the Ninth Circuit for support of his position, however, he states in misleading fashion the content and holdings of those cases. Two cases were concerned with whether the FCRA preemptive provisions preempted the *entire field* of state regulation, which Defendants do not and have never contended. See Credit Data of Az., 602 F.2d 195 (9th Cir. 1979); Sehl v. Safari Motor Coaches, Inc., 2001 WL 940846, 2001 U.S. Dist.

---

[1] Subsequent cases supporting the majority rule can be found in other states as well. See, e.g., Islam v. Option One Mortgage Corp., 432 F.Supp.2d 181 (D. Mass. 2006); Campbell v. Chase Manhattan Bank, USA, N.A.; 2005 WL 1514221 (D.N.J. 2005); Riley v. GMAC, 226 F.Supp.2d 1316 (S.D. Ala. 2002).

LEXIS 12638 (N.D. Cal. 2001). One case concerned itself solely with credit reporting agencies, which apply an entirely separate set of standards than the rules governing furnishers of credit information involved here. Guimond v. Trans Union Credit Information Co., 45 F.3d 1329 (9th Cir. 1995).[2] Another case determined that the FCRA was not triggered at all, Kates v. Crocker Nat'l Bank, 776 F.2d 1396, 1397-1398 (9th Cir. 1985), and the final two cases do not even address the issue of preemption *and* were declared inappropriate for publication or citation! Bishop v. U.S. Bancorp, 91 Fed.Appx. 583 (9th Cir. 2004); Sharon v. Nissan Motors Acceptance Corp., 44 Fed.Appx. 157 (9th Cir. 2002).

Plaintiff then inexplicably uses over a page of his Opposition to quote word-for-word from Roybal v. Equivax, Slip Copy, 2006 WL 902276 (E.D. Cal. 2006) in support of his contention that the FCRA does not preempt his state claims. However, the extended portion Plaintiff quotes is taken from the part of the opinion addressing claims against the *credit reporting agency*, not the furnisher of credit. Roybal, 2006 WL 902276 at *3-4. When turning to the credit furnisher's motion, the court blatantly states that "as discussed repeatedly above, *Medamerica is a furnisher of credit rather than a credit reporting agency and, therefore, is exposed to different levels of liability under the FCRA.*" Id. at *4 (emphasis added). The court then goes on to proclaim:

> Here, Plaintiffs are seeking recovery from Medamerica for failing to correct allegedly false credit entries on their credit report. The obligation of furnishers of credit to accurately report credit information is contained in Section 1681s-2. Plaintiffs' allegation that Medamerica is liable to them for failing to correct inaccurate credit information is an allegation that Medamerica has violated Section 1681s-2(b). Section 1681t(b)(1)(F)(ii) expressly provides that states may not impose any regulations or prohibitions with respect to matter

---

[2] Plaintiff mistakenly states in footnote 7 of his Opposition that Defendants are both a furnisher of credit and a consumer reporting agency. However, Defendants are *only* furnishers of credit, as a "credit reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C.A. §1681a(f). Defendants do not assemble credit reports to be used by third parties, and multiple cases have declared that those who "merely furnish information to consumer reporting agencies based on their experience with consumers are not consumer reporting agencies." DiGianni v. Stern's, 26 F.3d 346, 348 (2nd Cir. 1994); see also, e.g., Rush v. Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1985).

> regulated under section 1681s-2. <u>Plaintiffs' State Claims against Medamerica, as a furnisher of credit, fall within the purview of Section 1681s-2 and are, therefore, preempted by the FCRA</u>. Accordingly, Medamerica's Motion to Dismiss Plaintiffs' State Claims is granted <u>with prejudice and without leave to amend</u>.

<u>Id.</u> (emphasis added). The court referred to its own earlier opinion, which Defendants here included in their Motion for Summary Judgment, to explain that its former reasoning dismissing all state claims against another furnisher of credit applied equally to the furnisher of credit at issue in this disposition. <u>Id.</u> Consequently, the <u>Roybal</u> court has *twice* dismissed all state claims against furnishers of credit where the claims related to a failure to correct inaccurate information in a credit report.

Plaintiff's reliance on a Western Louisiana decision, <u>Whitesides v. Equifax Credit Information Services Inc.</u>, is similarly misplaced. 125 F.Supp.2d 807 (W.D. Louis. 2000). Although that court chose not to apply the specific preemption clause of the FCRA to bar the Plaintiff's state claims, the court did not discuss whether the *general preemption clause* would have resulted in a different outcome. <u>Id.</u> at 811. The general preemption clause was not under consideration, therefore, the court had no opportunity to opine on the matter. Consequently, <u>Whiteside</u> is of little, if any, help in determining the question before the court.

On the other hand, <u>Islam v. Option One Mortgage Corp.</u>, another case on which the Plaintiff inappropriately relies, is illustrative on this point. 432 F.Supp.2d 181 (D. Mass. 2006). That court similarly chose not to apply the specific preemption clause, *but did apply the general preemption clause to bar Plaintiff's state claims*. <u>Id.</u> at 194. The court stated that the general preemption clause's "explicit terms preempt all state-law claims related to the subject matter of 1681s-2." <u>Id.</u> Therefore, the court dismissed the state claims related to the defendant's alleged negligent reporting of information to credit agencies. <u>Id.</u> Plaintiff contends in his Opposition (13:26-14:2) that the <u>Islam</u> court refused to dismiss the negligence claims, however, the portion of the opinion Plaintiff cites to refers only to allegations of negligent accounting and collection of a debt, which are not preempted by the FCRA and were therefore analyzed under the standard principles of negligence. <u>Id.</u> Plaintiff

here has not alleged any claim of the sort against Defendants, so that section of the Islam opinion is entirely irrelevant.

The general preemption clause is not restricted to state statutory claims, as Plaintiff insists. The general preemption clause commands that:

> No requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.

15 U.S.C.A. § 1681t(b)(1)(F). Although Plaintiff believes that "the laws of any State" refers solely to statutory laws, this term is broad and encompasses both a state's statutory law *and* common law. In construing similar language in a different federal statute, the Supreme Court declared:

> The statutory phrase "requirement or prohibition" suggests no distinction between positive enactments and common law, but, in fact, easily encompasses obligations that take the form of common-law rules, while <u>the phrase "imposed under State law" clearly contemplates common law as well as statutes and regulations.</u>

Cipollone v. Liggett Group, Inc., 505 U.S. 504, 505, 112 S.Ct. 2608, 2612 (1992) (emphasis added) (interpreting the Federal Cigarette Labeling and Advertising Act). There is no reason to believe that the preemption clause of the FCRA should be interpreted any less narrowly than other federal statutes using the same language.

Plaintiff accurately states that "th[is] issue has not been squarely presented to our appellate courts or the Supreme Court." Opposition, 4:21-22. In the absence of clear, guiding mandates, this court must look to how the issue has been resolved not only by the majority of courts opining on the issue, but how the courts within its own circuit have resolved the question. An examination of all court decisions - including those in our own circuit - rendering decisions on FCRA preemption reveal that the overwhelming majority of courts preempt state claims against furnishers of credit, whether through use of the specific or the general preemption clause. Defendants urge this court to look past Plaintiff's verbose

///

and inaccurate portrayals of the law and grant Defendant's Motion for Summary Judgment on all state claims as preempted by the FCRA.

    1.    <u>There is No Such Claim for Impairment of Credit Identified as Plaintiff's Count 18, and Even if There Were Such a Claim, it is Preempted By the FCRA.</u>

Plaintiff's reliance on <u>Dodge Bros. v. General Petroleum Corp.</u>, 13 P.2d 218 (Nev. 1932), only supports Defendants' contention that no such claim for "impairment of credit" is recognized in Nevada. <u>Dodge Bros.</u> discussed the term "impairment of credit" as a *condition for cancellation of a contract* between the parties. <u>Id.</u> at 219. One party did cancel the contract because the other party's credit had become impaired, and the Nevada Supreme Court declared that the cancelling party was within its right to do so based on the mutually agreed terms of the contract. <u>Id.</u> at 220. The mere fact that the court referred to "impairment of credit" as a term for cancellation of a contract in 1932 does not transform those words into a cognizable cause of action.

Even if Count 18 is a viable cause of action, it is preempted by the FCRA as explained above. Moreover, Plaintiff has failed to bring forth any facts in support of his allegation, which is also grounds for granting Defendants' motion for summary judgment on Count 18.

    2.    <u>Plaintiff's Claims for Defamation and Libel Per Se Are Preempted By the FCRA, and Plaintiff Has Failed to Bring Forth Any Facts In Support of Counts 17 or 19.</u>

As explained above, the FCRA both specifically and generally preempts Plaintiff's claims for defamation and libel per se. As such, a discussion of the merits of Plaintiff's claim is unnecessary.

However, even if preemption were not an issue, Plaintiff has not in nearly two years of litigation been able to come forward with any facts in support of his allegations. Plaintiff's Opposition merely refers the court back to his original Complaint, and does not point to any facts that could possibly support his contentions. It is an obvious dictate that when opposing a motion for summary judgment, the opponent "must set forth specific facts demonstrating that there is a genuine issue for trial." FRCP 56(e); <u>see also</u> <u>Summers v. A.</u>

Teichert & Son, 127 F.3d 1150, 1152 (9th Cir. 1997). Plaintiff has failed to meet this burden, and therefore, Defendants are entitled to judgment as a matter of law on Counts 17 and 19.

    3.    <u>Count 13 and Count 15 for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing are Concerned Solely With Defendants' Credit Reporting Actions and are Therefore Preempted By the FCRA.</u>

Plaintiff has alleged one count of breach of contract in Count 13 of his complaint. Plaintiff's entire allegation centers on Defendants' alleged false reporting to credit reporting agencies. Plaintiff first claims that Defendants "negligently caused, directed, or otherwise instructed several national credit reporting agencies ... to report false and damaging information regarding the credit history of the Plaintiff." Compl. ¶ 200. Plaintiff then alleges that "as a result of said false reporting" he has been unable to secure a home loan. Compl. ¶ 201. Finally, he alleges that Defendants "breached the contract by falsely directing that incorrect credit information be published regarding Plaintiff's credit history." Compl. ¶ 202. All of these allegations center around Defendants' alleged actions in reporting Plaintiff's credit history to credit reporting agencies, which, as explained above, is expressly preempted by the FCRA.

Plaintiff has alleged <u>two</u> counts of the breach of the obligation of good faith and fair dealing, detailed in Counts 10 and 15. Defendants only challenge Count 15, which again centers entirely on Defendants' alleged actions in reporting Plaintiff's credit. Count 15 specifically alleges that Defendants breached their obligation "by willfully and fraudulently reporting false and damaging information" to credit reporting agencies. ¶ 212. Again, this is based on conduct expressly preempted by the FCRA.

Because both Count 13 and Count 15 are based on Defendants' actions in reporting Plaintiff's credit history, both counts are preempted by the FCRA and Defendants are therefore entitled to summary judgment on both counts.

    4.    <u>Plaintiff's Claim for Slander of Title is Preempted by the FCRA, and Plaintiff Has Failed to Bring Forth Any Facts in Support of Count 14.</u>

As already explained, the preemption provisions of the FCRA bar Plaintiff's slander of title claim because the entire claim relates to Defendants' credit reporting activities.

Further, even if the preemption provisions were not at issue, Plaintiff has again failed to bring forth any facts in support of his claim. As such, he has failed to meet his burden and summary judgment must be granted in favor of Defendants on Count 14.

5. <u>Plaintiff Failed to Oppose Summary Judgment on Count 12 for Wantonness.</u>

Plaintiff's Opposition fails to raise any arguments in defense of his claim for wantonness. Because he has not brought forth any facts in support of his claim nor attempted to defend his claim, summary judgment on Count 12 must be granted in favor of Defendants.

**B.   PLAINTIFF'S LEMON LAW CLAIM UNDER NRS 597.630 IS NOT VIABLE BECAUSE DEFENDANTS FULFILLED THEIR STATUTORY DUTIES.**

The undisputed fact here is that when Plaintiff demanded buyback of his vehicle, Defendants complied. Defendants not only complied, they offered him a refund of *all expenses* he had incurred with the vehicle, even though Nevada law allowed Defendants to retain certain sums equal to a "reasonable allowance" for use of the vehicle. NRS 597.630(1)(b). The offer remained open for over a month, during which time Plaintiff made no effort to contact Defendants. Had Plaintiff accepted the first offer, dated March 3, 2004, he would have received $15,505.68 to reimburse him for *all expenses*,[3] and the remaining $53,869.81 owing on the vehicle would have been paid off to BMW Financial. The second offer, dated April 6, 2004, reflected a slightly reduced reimbursement in light of the fact that Plaintiff had only made eight car payments instead of ten as presumed in the original calculation.

Plaintiff's outrage at the Settlement Agreement sent by Defendants is perplexing at best. Surely Plaintiff would not have reasonably expected Defendants to lease the vehicle to him without signing a certain amount of paperwork outlining the agreement. Similarly, how could Plaintiff expect to walk away with a check for over $15,000 without any agreement outlining the terms of the buyback?

---

[3] This would have actually overly reimbursed Plaintiff, since the calculation was based on the presumption that Plaintiff had made all ten of his monthly payments. In fact, Plaintiff had only made eight payments, so the original offer would have reimbursed him for payments never made.

1  The bottom line is that Plaintiff refused to accept the generous offer extended to him, opting instead to pursue the matter in court. Defendants fulfilled all of their obligations under NRS 597.630, and Plaintiff has produced no facts to the contrary. As such, Defendants are entitled to summary judgment on Count 3.

### C. CONCLUSION

The FCRA specific and general preemption clauses bar any state claims related to Defendants credit reporting activities, and ruling as such falls in line with the decisions from other district courts in the Ninth Circuit. Even without considering the FCRA preemption provisions, Plaintiff has failed to bring forth any facts to support the claims at issue, and at times, alleges non-existent claims. Finally, Defendants honored all terms of the Lemon Law by offering to buyback the subject vehicle, and Plaintiffs have not demonstrated any facts to the contrary. Consequently, Defendants are entitled to summary judgment on all of the above claims.

Dated this __15__ day of August, 2006

LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
Michael M. Edwards, Nevada Bar No. 006281
Sheri M. Schwartz, Nevada Bar No. 008657
400 S. Fourth St., Suite 500
Las Vegas, Nevada 89101
Attorneys for Defendants BMW OF NORTH AMERICA, LLC; BMW Financial Services NA, LLC; and JRJ INVESTMENTS, INC. dba DESERT BMW of HENDERSON

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of LEWIS, BRISBOIS BISGAARD & SMITH, LLP and that on this 15th day of August, 2006, I did cause a true copy of **DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be placed in the United States Mail, with first class postage prepaid thereon, and addressed as follows:

Grenville Pridham
1611 East Charleston Blvd., Suite 3
Las Vegas, NV  89104-1859
Attorney for Plaintiff
Christopher Trout

Phone: 614.3388
Fax:     614.3383

By _____
An Employee of
LEWIS BRISBOIS BISGAARD & SMITH LLP