**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| CHRISTOPHER TROUT, | ) | 2:04-CV-01466-BES-LRL |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| BMW OF NORTH AMERICA, a corporation or business entiiy; BMW FINANCIAL SERVICES, a corporation or business entity; DESERT BMW of HENDERSON, a Nevada corporation, and DOES 1 through 10, inclusive, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Currently before this Court is a Motion for Summary Judgment or in the Alternative, Motion for Partial Summary Judgment (#27) filed by Defendants BMW of North America, LLC, BMW Financial Services and Desert BMW of Henderson (collectively "BMW") on June 23, 2006. Plaintiff Christopher Trout ("Trout") filed an Opposition (#31) on August 1, 2006 and Defendants filed a Reply (#32) on August 15, 2006.

**I. BACKGROUND**

This action arises out of Trout's lease of a BMW vehicle in March of 2003 from Desert BMW. The lease agreement was between Trout and BMW Financial. Pursuant to the terms of the lease, Trout agreed to make monthly payments in the amount of $949.97. On December 4, 2003, the vehicle had a tire blow-out and was towed to Desert BMW's repair

facility. According to Trout, the vehicle remained there for over 30 days. At the request of Trout, BMW North America offered to buy back the vehicle, including reimbursing Trout for the down payment, the payments made on the vehicle and attorneys' fees. Trout rejected this buy-back offer after learning on February 24, 2004, that BMW Financial had reported at least one derogatory remark to credit reporting agencies based on his delinquent payments. Trout alleges that because of the derogatory credit mark, he was prevented from securing a loan.

Trout filed this action, seeking damages for violations of the Fair Credit Reporting Act, the Magsuon-Moss Warranty Act, Nevada's statutory "lemon law" and various state law claims for relief.

## II. ANALYSIS

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is "not warranted if a material issue of fact exists for trial." Ribitzki v. Canmar Reading & Bates, 111 F.3d 658, 661–62 (9th Cir. 1997). A material fact is one that "might affect the outcome of the suit under the governing law . . . ." Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)). Further, any dispute regarding a material issue of fact must be genuine— the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978); *see also* Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment.").

The district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. *See* Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029-31 (9th Cir. 2001) . The district court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir.1995)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Applying these principles, the Court now turns to whether summary judgment is warranted in this case.

The Fair Credit Reporting Act ("FCRA") requires that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for information as to consumer credit, personnel, insurance, and other information in a manner that is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of the Act. 15 U.S.C. §§ 1681 - 1681x. Trout does not specify in the Complaint which provision of the FCRA he contends BMW has violated. BMW clearly does not constitute a consumer reporting agency, but instead is a "furnisher of information." In 1996, Congress amended the FCRA to impose duties upon persons who furnish information to credit reporting agencies. *See*, 15 U.S.C. §

1681 s-2. Prior to these amendments, the FCRA did not impose any duties on those furnishing information to credit reporting agencies." Ryan v. Trans Union Corp., 2000 WL 1100440, *1 (N.D . Ill.2000).

### A.   State Common Law Claims.

BMW argues that Trout's state common law claims are preempted by the Federal Fair Credit Reporting Act ("FCRA"). Trout claims that the FCRA was never intended to preempt anything other than mini-credit reporting acts enacted by states over time. Section 1681t governs the preemptive scope of the FCRA. That section states that as a general matter the FCRA does not preempt state laws, however, there are critical exceptions to this provision. *See,* 15 U.S.C. § 1681t(a). A general exception is found in § 1681(b), which states that no requirement or prohibition may be imposed under the laws of any state with respect to any subject matter regulated under § 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies. 15 U.S.C. § 681t(b)(F)(1); Cisneros v. Trans Union, LLC, 293 F.Supp.2d 1167, 1175 (D.Hawaii 2003).

The Ninth Circuit has not defined the scope of the preemption under the FCRA. However, the majority of district courts in the Ninth Circuit have held that the FCRA preempts state statutory and common law causes of action which fall within the conduct proscribed under § 1681s-2(a). Cisneros, 293 F.Supp.2d at 1174; Roybal v. Equifax, 405 F.Supp.2d 1177, 1179-1180 (E.D. Cal. 2005); Davis v. Maryland Bank N.A., 2002 WL 32713429, *12 -13 (N.D.Cal.,2002).[1] The conduct prohibited by furnishers of information pursuant to § 1681s-2(1) includes the reporting of information with actual knowledge of errors and reporting of information after notice and confirmation of errors. 15 U.S.C. § 1681s-2(1). In summary,

---

[1] Other district courts from other circuits are in agreement as well. See Aklagi v. Nationscredit Financial Serv. Corp., 196 F.Supp.2d 1186, 1194-95 (D.Kan.2002) (finding defamation claim preempted under section 1681t(b)(1)(F)); Hasvold v. First U.S.A. Bank, 194 F.Supp.2d 1128, 1239 (D.Wyo.2002) (finding FCRA preempts state common law claims for defamation, invasion of privacy, and interference with prospective advantage); Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp.2d 356, 362 (E.D.Pa.2001) (Section 1681t(b)(1)(F) preempts Pennsylvania's Consumer Protection law); see also National Home Equity Mortgage Ass'n v. Face, 64 F.Supp.2d 584, 592 (E.D.Va.1999) (noting in dictum that FCRA meant to preempt state law regulating consumer credit transactions); Korotki v. Attorney Servs. Corp., 931 F.Supp. 1269, 1280 (D.Mary.1996) (noting in dictum that FCRA would preempt tort claims).

furnishers of information cannot provide inaccurate information, but if they do, any state statutory and common law causes of action brought as a result of this conduct are preempted by the FCRA.

The court in Davis, 2002 WL 32713429, *12 -13 (N.D.Cal. 2002) reiterated that the plain language of § 1681t(b)(1)(F) "clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting." Davis, 2002 WL 32713429, *12 -13, *citing* Jaramilo, 155 F.Supp.2d at 362. The Davis court went on to explain,

> "......the legislative history demonstrates that Congress enacted section 1681t(b)(1)(F) in order to create a uniform scheme governing the disclosure of credit information. *See* Kodrick v. Ferguson, 54 F.Supp.2d 768, 794 (N.D.Ill.1999) (discussing legislative history of FCRA's preemption provisions). Allowing common law tort claims which implicate the same subject matter as section 1681s-2(1) would undermine Congress' intention to create a uniform system of protection for consumers. In light of the foregoing, the Court finds that section 1681t(b)(1)(F) preempts both state statutory and common law causes of action which implicate the subject matter of section 1681s-2.

Pursuant to Davis, Trout's claim that the FCRA only preempts state mini-reporting statutes is rejected. Thus, the question is to what extent Trout's state claims fall within the prohibition against reporting or providing inaccurate information.

The Court finds that the claims for credit impairment (count 18) and wantonness (count 12) are preempted.[2] As stated above, BMW is a furnisher of credit and any state law claims regarding BMW's failure to report or provide accurate information are preempted by FCRA. Trout's basis for the claims of wantonness and impairment of credit is that BMW Financial Services negligently caused, directed or otherwise instructed several national credit reporting agencies to report false and damaging information regarding the credit history of Trout.[3] Trout's negligence claims are based upon the assertion that BMW Financial failed to take

---

[2] Because the claims for impairment of credit and wantonness are preempted, the Court does not need to reach the issue of whether the claims of impairment of credit and wantonness state a claim under Nevada law.

[3] The Court notes that Trout only brought the state common law claims against BMW Financial. There are no allegations against BMW North America or Desert BMW of Henderson. As such, even if these state common law claims were not preempted, they would be dismissed against BMW North America and Desert BMW of Henderson.

steps as necessary to direct correction, removal or otherwise remedy the existing false and damaging credit information. This is the exact type of conduct which is prohibited under § 1681s-2(a)-(b) and thus is preempted under § 1681t(b)(1)(F).

Similarly, Trout's claims for breach of contract (count 13) and breach of the covenant of good faith and fair dealing (count 15) are preempted under § 1681t(b)(1)(F). Trout alleges that BMW Financial Services breached the contract by falsely directing that incorrect credit information be published regarding Trout's credit history and that the covenant of good faith and fair dealing was breached when BMW Financial Services willfully and fraudulently reported false and damaging information to credit reporting agencies, for subsequent distribution to a large number of various institutions seeking to verify the credit worthiness of Trout. Again, the conduct alleged in these causes of action is the precise conduct which is prohibited under § 1681s-2(a)-(b) and preempted under § 1681t(b)(1)(F).

With respect to Trout's claim for slander of title (count 14), this claim also is preempted under § 1681t(b)(1)(F). Trout alleges that BMW Financial slandered the title of the automobile by wrongfully reporting timely payments as late credit payments and by failing to take reasonable steps to properly verify the fraudulent information. This conduct is preempted under § 1681t(b)(1)(F).

Finally, the claims for defamation (count 17) and libel per se (count 19) arise from Trout's claims that BMW Financial Services improperly caused several national credit reporting agencies to report false and damaging information regarding the credit history of Trout. These claims also are preempted under the FCRA. *See* Davis, 2002 WL 32713429, \*12 -13 (N.D.Cal.,2002) (defamation claim preempted under FCRA); Gorman v. Wolpoff & Abramson, LLP, 435 F. Supp. 2d 1004 (N.D. Cal. 2006) (libel claim brought by consumer against credit card issuer, alleging erroneous reporting of disputed charges, failed to aver malice or willful intent to injure, and thus was preempted by FCRA). Trout has not alleged any claims of malice or willfulness and therefore, the defamation claim is not authorized under 15 U.S.C. § 1681h(e), which allows an action for defamation with respect to the reporting or furnishing of information with malice or willful intent to injure each consumer. *See*, 15 U.S.C. § 1681h(e);

1 Roybal, 405 F.Supp.2d 1177, 1179 -1180 (E.D.Cal.,2005); Nelson v. Chase Manhattan Mort. Corp., 282 F.3d 1057 (9th Cir. 2002). In fact, Trout concedes that § 1681h(e) is not applicable and that disclosures contemplated by § 1681h(e) are not at issue in this case. The conduct at issue is governed by section 1681s-2(1)(a)-(b), not section 1681h(e), and is thus preempted under section 1681t(b)(1)(F).

### B.    State Statutory Claim.

Trout's Third Claim for Relief is for violations of Nevada's "lemon law" found in chapter 597 of the Nevada Revised Statutes. Pursuant to NRS 597.630, a consumer is allowed to seek replacement or reimbursement of a vehicle if the problem with the vehicle is not fixed after a reasonable number of attempts and the problem substantially impairs the use and value of the vehicle to the buyer. Under the "lemon law," upon return of the vehicle, the manufacturer or dealer must refund the buyer the full purchase price including all sales taxes, license fees, registration fees and other similar governmental charges, less a reasonable allowance for the buyer's use of the vehicle. NRS 597.630(1)(b).

It is undisputed that BMW offered to buy back the vehicle, which included reimbursing Trout for the down payment, the payments made on the vehicle and also offering to pay Trout's attorneys' fees. This constitutes a reasonable refund to the buyer. Under this set of facts, BMW did not violate Nevada's Lemon Law, but actually attempted to comply with it. Trout suggests that BMW's offer was in violation of the lemon law because it offered the money with a release agreement which Trout was not willing to sign. However, Trout offers no evidence to support this allegation regarding a release to dispute that BMW was not in compliance with Nevada's lemon law. As stated above, conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor, 880 F.2d at 1045.[4]

### C.    Counts 11 and 16 of the Complaint.

---

[4] Furthermore, chapter 597 of the Nevada Revised Statutes contemplates the parties using a release in certain circumstances. See, NRS 597.686. Therefore, BMW's request that Trout sign a release, without more substantial evidence, is not by itself/without more, a violation of Nevada's lemon law.

7

BMW also asserts that Trout cannot maintain Counts 11 and 16 for violations of the FCRA because there is no private right of action against a furnisher of credit for failing to provide accurate information. In his Opposition, Trout stipulated to the dismissal of Counts 11 and 16. Hence, the Court does not need to address the merits of BMW's Motion for Partial Summary Judgment with respect to Counts 11 and 16.

### III. CONCLUSION

In accordance with the foregoing,

IT IS HEREBY ORDERED that Defendant BMW's Motion for Partial Summary Judgment (#27) is GRANTED and Counts 3, 11, 12, 13, 14, 15, 16, 17, 18 and 19 are dismissed.

DATED: This 12th day of February, 2007.

BRIAN SANDOVAL
United States District Judge